1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8                FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10  SCOTT RANDELL GILBERT,                    No.  2:10-cv-3336 LKK AC P

11              Petitioner,

12     v.                                     FINDINGS & RECOMMENDATIONS

13  MIKE McDONALD, Warden

14              Respondent.

15

16

17          Petitioner is a California state prisoner proceeding pro se under 28 U.S.C. § 2254.  In

18  2007, he was convicted by a Butte County jury of two counts of kidnapping with use of a deadly

19  weapon, for which he was sentenced to serve 31 years to life under California's "three strikes"

20  statute.  In the pending petition filed on January 10, 2011, petitioner asserts seven grounds for

21  relief.[1]  See ECF No. 4.  Respondent's answer (ECF No. 22) and petitioner's traverse (ECF No.

22  28) are also before the court.  Respondent concedes exhaustion on Claims One through Four, but

23  asserts that Claims Five, Six and Seven remain unexhausted or, in the alternative, are

24  procedurally barred.  Because petitioner's Claims Five, Six and Seven are clearly without merit

25

26  _____

27  [1] Petitioner's grounds for relief are numbered one two, three, four, four, five and six, with two
    separate grounds designated ground four.  For purposes of this report, petitioner's grounds for
28  relief have been consecutively redesignated Claims One through Seven and are referred to
    accordingly.

                                            1

and because petitioner fails to present a colorable federal claim, it will be recommended that the petition be denied on the merits.

I.      STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." Williams v. Taylor, 529 U.S. 362, 412 (2000).  It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error.  See Frantz v. Hazey, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons.  Harrington v. Richter, 131 S. Ct. 770, 785 (2011).  State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary.  Id. at 784−785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

1   U.S. 63, 71−72 (2003).  Clearly established federal law also includes "the legal principles and

2   standards flowing from precedent."  <u>Bradley v. Duncan</u>, 315 F.3d 1091, 1101 (9th Cir. 2002)

3   (quoting <u>Taylor v. Withrow</u>, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent

4   may constitute "clearly established Federal law," but circuit law has persuasive value regarding

5   what law is "clearly established" and what constitutes "unreasonable application" of that law.

6   <u>Duchaime v. Ducharme</u>, 200 F.3d 597, 600 (9th Cir. 2000); <u>Robinson v. Ignacio</u>, 360 F.3d 1044,

7   1057 (9th Cir. 2004).

8       A state court decision is "contrary to" clearly established federal law if the decision

9   "contradicts the governing law set forth in [the Supreme Court's] cases."  <u>Williams</u>, 529 U.S. at

10  405.  This includes use of the wrong legal rule or analytical framework.  "The addition, deletion,

11  or alteration of a factor in a test established by the Supreme Court also constitutes a failure to

12  apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA."  <u>Benn v.</u>

13  <u>Lambert</u>, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002).

14      A state court decision "unreasonably applies" federal law "if the state court identifies the

15  correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the

16  particular state prisoner's case."  <u>Williams</u>, 529 U.S. at 407−08.  It is not enough that the state

17  court was incorrect in the view of the federal habeas court; the state court decision must be

18  objectively unreasonable.  <u>Wiggins v. Smith</u>, 539 U.S. 510, 520−21 (2003).  This does not mean,

19  however, that the § (d)(1) exception is limited to applications of federal law that "reasonable

20  jurists would all agree is unreasonable."  <u>Williams</u>, 529 U.S. at 409 (rejecting Fourth Circuit's

21  overly restrictive interpretation of "unreasonable application" clause).  State court decisions can

22  be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when

23  they fail to give appropriate consideration and weight to the full body of available evidence, and

24  when they proceed on the basis of factual error.  <u>See</u>, <u>e.g.</u>, <u>Williams</u>, 529 U.S. at 397−98;

25  <u>Wiggins</u>, 539 U.S. at 526−28 & 534; <u>Rompilla v. Beard</u>, 545 U.S. 374, 388−909 (2005); <u>Porter v.</u>

26  <u>McCollum</u>, 558 U.S. 30, 42 (2009).

27      The "unreasonable application" clause permits habeas relief based on the application of a

28  governing principle to a set of facts different from those of the case in which the principle was

3

1    announced.  Lockyer, 538 U.S. at 76.  AEDPA does not require a nearly identical fact pattern

2    before a legal rule must be applied.  Panetti v. Quarterman, 551 U.S. 930, 953 (2007).  Even a

3    general standard may be applied in an unreasonable manner.  Id.  In such cases, AEDPA

4    deference does not apply to the federal court's adjudication of the claim.  Id. at 948.

5        Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review

6    is confined to "the state court's actual reasoning" and "actual analysis."  Frantz, 533 F.3d at 738

7    (emphasis in original).  A different rule applies where the state court rejects claims summarily,

8    without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court

9    denies a claim on the merits but without a reasoned opinion, the federal habeas court must

10   determine what arguments or theories may have supported the state court's decision, and subject

11   those arguments or theories to § 2254(d) scrutiny.  Richter, 131 S. Ct. at 786.

12       Relief is also available under AEDPA where the state court predicates its adjudication of a

13   claim on an unreasonable factual determination.  Section 2254(d)(2).  The statute explicitly limits

14   this inquiry to the evidence that was before the state court.  Even factual determinations that are

15   generally accorded heightened deference, such as credibility findings, are subject to scrutiny for

16   objective reasonableness under § 2254(d)(2).  See, e.g., Miller-El v. Dretke, 545 U.S. 231, 240

17   (2005) (rejecting credibility finding as unreasonable in light of the evidence before the state

18   court).

19       To prevail, a habeas petitioner must establish the applicability of one of the § 2254(d)

20   exceptions and also must also affirmatively establish the constitutional invalidity of his custody

21   under pre-AEDPA standards.  Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc).  There is

22   no single prescribed order in which these two inquiries must be conducted.  Id. at 736−37.  The

23   AEDPA does not require the federal habeas court to adopt any one methodology.  Lockyer v.

24   Andrade, 538 U.S. 63, 71 (2003).

25   II.      FACTUAL AND PROCEDURAL BACKGROUND

26       Petitioner was charged by information in the Butte County Superior Court with two

27   counts of kidnapping in violation of California Penal Code § 207(a), with a special allegation as

28   to each count that he personally used a deadly weapon (see Cal. Pen. Code § 12022(b)(1)).  The

information also alleged that petitioner had incurred two prior convictions, each qualifying as a prior serious felony (Cal. Penal Code § 667(a)(1)) and a "strike" under California's Three Strikes statute (Cal. Penal Code §§ 667, 1170.12).

At trial, the prosecution presented evidence establishing the following facts.  Petitioner met Susan ("Suzie") Thompson in Chico shortly after his release from prison.  Three days later, he pulled a knife on Thompson's boyfriend Wade Stafford and forced him to call Thompson and arrange for her to pick them up.  After she picked them up, petitioner let her go back to her trailer to get her purse.  He then pulled out a knife and ordered her to drive to Redding on Interstate 5.  Thompson eventually answered a cell phone call and told Stafford's mother they had been kidnapped.  Petitioner allowed Thompson to drive back to Chico, and he was arrested near Thompson's trailer.

The jury found petitioner guilty of both kidnapping charges and found the deadly weapon enhancements true.  Petitioner waived jury trial on the prior convictions.  The court found the strikes and serious felony prior allegations to be true.  On March 25, 2008, petitioner was sentenced to an aggregate term of 31 years to life.

On appeal, petitioner challenged the trial court's finding that his two prior assault convictions both qualified as prior serious felonies within the meaning of the state's three strikes law.  On October 13, 2009, the California Court of Appeal, Third District, affirmed the convictions and sentence, rejecting petitioner's claim of error at the court trial on the prior strikes.  Presented with the same claim, the California Supreme Court denied a petition for review.

Petitioner presented additional grounds for relief on state habeas corpus.  The Butte County Superior Court and the California Court Appeal denied his state habeas petitions on March 26, 2010 and May 6, 2010, respectively.  Petitioner filed a petition to the California Supreme Court on July 16, 2010; that petition was denied on February 16, 2011.  Thus, although petitioner's state habeas petition was still pending in the California Supreme Court when he filed his federal petition on January 10, 2011, it has since been denied.

////

////

5

III.     CLAIMS ONE, TWO AND THREE:  PRIOR ASSAULT CONVICTIONS

A.   Petitioner's Allegations

Claims One, Two and Three of the pending petition each challenge the trial court's finding that petitioner's two prior assault convictions were for assault with a deadly weapon, a serious felony within the meaning of the state's three strikes law.  In Claim One, petitioner requests the court to review "the circumstances in which prior conviction under Penal Code § 245, subdivision (a)(1) may be deemed as assault w/a deadly weapon (ADW), as opposed to the non-strike offense of assault by means likely to produce (GBI).  When the court documents make reference to both crimes [sic]."  ECF No. 4 at 4.[2]  In Claim Two, petitioner alleges the trial court committed reversible error and violated his Fourteenth Amendment due process rights by finding that his prior convictions were for assault with a deadly weapon.  Id.  In Claim Three, petitioner asserts there was insufficient evidence to support the trial court's finding that the prior convictions were for assault with a deadly weapon.  Id. at 5.

B.   The Clearly Established Federal Law Governing Claims One through Three

Federal habeas relief is generally unavailable for an alleged error in the interpretation or application of state sentencing laws by a state trial court or appellate court.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citing Estelle v. McGuire, 502 U.S. 62, 67 (1991)); Richmond v. Lewis, 506 U.S. 40, 50 (1992) (holding that the question to be decided by a federal court on habeas corpus is not whether the state committed state-law error, but rather, whether the state court's action was "so arbitrary and capricious" as to constitute an independent violation of the federal constitution).  "State courts are the ultimate expositors of state law," and a federal habeas court is bound by the state's construction except when it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue."  Mullaney v. Wilbur, 421 U.S. 684, 691 (1975).

---

[2] The court references the page numbers assigned by the court's CM-ECF system to the petition.

1    Sufficient evidence supports a conviction if, "after viewing the evidence in the light most

2    favorable to the prosecution, any rational trier of fact could have found the essential elements of

3    the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also

4    McDaniel v. Brown, 558 U.S. 120, 130−31 (2010); United States v. Okafor, 285 F.3d 842,

5    847−48 (9th Cir. 2002) (applying the clearly established Jackson standard to review whether

6    sufficient evidence supported the fact of a prior conviction).  Sufficiency of the evidence claims

7    raised in habeas proceedings are reviewed "with explicit reference to the substantive elements of

8    the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n.16.  In determining

9    whether sufficient evidence supports a conviction, a federal court is bound by "a state court's

10   interpretation of state law." Richey, 546 U.S. at 76.

11       C.  The State Court's Adjudication

12   Claims One, Two and Three were exhausted by presentation to the California Supreme

13   Court in the petition for review filed November 20, 2009.  See Lodg. Doc. 6 at 3 [Claim One], 7-

14   10 [Claim Two], 11-23 [Claim Three].  Because the California Supreme Court denied the petition

15   for review summarily and without a reasoned decision (see Lodg. Doc. 7), the prior decision of

16   the California Court of Appeal is the last reasoned state court decision applicable to these claims.

17   See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991) (explaining that a federal habeas court

18   generally "looks through" the unreasoned decision of a state's highest court to the last reasoned

19   state court decision on the merits, if any).  Presented with the allegations contained in petitioner's

20   Claims One, Two, and Three, the California Court of Appeal discussed the relevant facts and

21   analyzed the issues as follows:

22              Defendant's sole contention is the evidence does not support the
              trial court's finding that his two 1992 convictions for assault in
23              violation of section 245, subdivision (a)(1) both qualify as prior
              serious felonies within the meaning of the Three Strikes law.
24

25              At the trial on the strike allegations, the People introduced a copy of
              the information filed in Butte County in 1992 charging defendant in
26              count 1 as follows: "On or about June 5, 1992, in the above named
              Judicial District, the crime of ASSAULT GREAT BODILY
27              INJURY AND WITH DEADLY WEAPON, in violation of
              PENAL CODE SECTION 245,(a)(1), a Felony, was committed by
28

7

[defendant], who did willfully and unlawfully commit an assault upon [the victim] with a deadly weapon, to wit, a tree branch, and by means of force likely to produce great bodily injury." In count 2, defendant was charged with the same crime in the same language, but with a different victim. The complaint also alleged great bodily injury (§ 12022.7) and hate crime (§ 422.75) enhancements for both counts.

The next item of evidence was the change of plea form. The form shows defendant entered a no contest plea to two counts of violating section 245, subdivision (a)(1), the hate crime enhancement in count 1, and counts in other cases, in exchange for dismissing the remaining charges. The plea form included an advisement initialed by defendant that he could be subject to "SERIOUS FELONY PRIOR/PRISON PRIOR" as a consequence of the plea. Defendant also initialed a Harvey[FN2] waiver as part of the plea form.

    FN2. People v. Harvey (1979) 25 Cal.3d 754.

The minute order for sentencing on the prior assault convictions was also introduced. It describes the two assault counts as "Assault GBI w/DW." The trial court imposed an upper term for both counts, with the minute order listing the following aggravating factors: "injuries, serious injuries with deadly weapon, crimes of violence, serious danger to public, on Court probation at time of incidents, prior performance unsatisfactory."

The abstract of judgment for the prior offenses described the two assault convictions as "Assault GBI w/DW" with upper terms for both counts. Finally, the People introduced the record of defendant's prison commitment for the prior assault convictions.

The court sustained the strike allegations, finding the two prior convictions were for assault with a deadly weapon and therefore serious felonies and strikes under section 1192, subdivision (c)(31).

Defendant argues the charging document, plea agreement abstract of judgment, and the description of the offenses in the minutes are ambiguous as to whether the assault convictions were for assault with a deadly weapon or assault by means likely to produce a great bodily injury. He also asserts the rule of Apprendi v. New Jersey (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 455] (Apprendi) and California law preclude consideration of the sentencing factors used by the previous court to impose the upper term. We disagree.

A prior conviction counts as a strike if it is listed as a serious felony under section 1192.7, subdivision (c). "[A]ssault with a deadly

8

weapon ... in violation of Section 245" counts as a serious felony for this purpose, without regard to whether the defendant personally used the deadly weapon.  (§ 1192.7, subd. (c)(31); People v. Luna (2003) 113 Cal.App.4th 395, 398, disapproved on other grounds in People v. Delgado (2008) 43 Cal.4th 1059, 1070, fn. 4.)  The other part of section 245, subdivision (a)(1), assault "by any means of force likely to produce great bodily injury," does not count as a serious felony unless it also involves the use of a deadly weapon or results in the personal infliction of great bodily injury. (People v. Banuelos (2005) 130 Cal.App.4th 601, 605 (Banuelos).)

In a court trial of a prior, the trial court may look to the entire record of conviction to determine the nature of the prior offense. (People v. Rodriguez (1998) 17 Cal.4th 253, 261-262; People v. Guerrero (1988) 44 Cal.3d 343, 355-356.)  In doing so, the court may look to the charging instrument so far as it shows the allegations the defendant subsequently admitted by plea. (People v. Reed (1996) 13 Cal.4th 217, 224; People v. Guerrero, supra, 44 Cal.3d at pp. 345, 356.)

The information in the prior case charged in both counts that defendant committed "ASSAULT GREAT BODILY INJURY AND WITH DEADLY WEAPON, in violation of PENAL CODE SECTION 245,(a)(1)" against his victims "with a deadly weapon, to wit, a tree branch, and by means of force likely to produce great bodily injury."   The use of the conjunctive in an information charging a violation of section 245, subdivision (a)(1), when the statute uses the disjunctive in defining the crime, has been found to charge "only the single act of assault with a deadly weapon." (People v. Flynn (1995) 31 Cal.App.4th 1387, 1394.)   "In such instance the phrase 'by means of force likely to produce great bodily injury' simply describes the manner in which the weapon is used and serves to explain why it thereby constitutes a deadly weapon." (Ibid.) Defendant pled no contest to both counts.  As stated in People v. Hayes (1992) 6 Cal.App.4th 616, 623: "[W]here a defendant enters a guilty plea constituting his voluntary admission he committed the acts alleged in the indictment, such plea unequivocally establishes the particular elements alleged were both raised and resolved."   (Original italics; accord, People v. Davis (1996) 42 Cal.App.4th 806, 814.)

Defendant argues to the contrary, citing Banuelos, supra, 130 Cal.App.4th 60.   Banuelos held that a guilty plea to an offense described in the abstract of judgment and a fingerprint card as "'ASSAULT GBI W/DEADLY WEAPON or "'CT1 PC245(A)(1) ASSLT GRT BDLY INJ W/DDLY WPN'" was not proved to be a serious felony because "[t]hese documents are completely silent on the question of whether appellant personally used a deadly weapon

or personally inflicted great bodily injury...." (Banuelos, supra, 130 Cal.App.4th at p. 605, original italics.)   The Court of Appeal in Banuelos reasoned that the documents' reference to both aspects of section 245, subdivision (a)(1), was inherently ambiguous and could not be taken to prove that the defendant committed the form of assault covered by the Three Strikes law. (Banuelos, supra, at pp. 606-607.) However, Banuelos is distinguishable; so far as the opinion shows, the prosecution did not proffer the information, plea form, and minutes, as in our case, but only the abstract of judgment and fingerprint card. (Id. at p. 606.)

Nor do we accept defendant's contention that his plea is only an admission to the least serious form of the offense. It is true that "if the prior conviction was for an offense that can be committed in multiple ways, and the record of the conviction does not disclose how the offense was committed, a court must presume the conviction was for the least serious form of the offense. [Citations.]" (People v. Miles (2008) 43 Cal.4th 1074, 1083.)  This presumption is inapplicable because the information establishes defendant's prior convictions were for assault with a deadly weapon.

The sentencing minutes also supports [sic] the courts finding.  The aggravating factors used by the prior trial court in imposing the upper term for the assaults, specifically, that the assaults involved serious injuries with a deadly weapon, is further proof that defendant was convicted of assault with a deadly weapon.

We reject defendant's contention that the rule of Apprendi precludes consideration of the prior court's statement of reasons for imposing the upper term.  Apprendi, which was decided long after defendant's prior convictions, did not apply to his upper term sentences for the assault counts. (See In re Consiglio (2005) 128 Cal.App.4th 511, 515-516 [Apprendi does not apply retroactively to cases that are already final]; Curtis v. United States (7th Cir. 2002) 294 F.3d 841, 842 [unanimous rule that Apprendi does not apply retroactively on federal habeas corpus].)  Nor did the trial on the strike allegations violate Apprendi; defendant waived his right to a jury trial on the strikes and the court's findings on the strike allegations applied the beyond a reasonable doubt standard.

Although the aggravating factors in the prior conviction were found under a preponderance standard, this does not preclude the present trial court from using them as evidence of the nature of defendant's prior convictions. This was not, as defendant contends, an improper use of collateral estoppel, but simply one piece of evidence relied on by the trial court. While it is possible the previous trial court relied on the probation report in finding the aggravating

1
2
3
4

circumstance, the present court did not, relying only on the record of the prior conviction-the information, the plea form, the minutes, and the abstract. Defendant's reliance on People v. Reed, supra, 13 Cal.4th at pages 230-231, which involved the use of a probation report in determining the nature of a prior conviction, is misplaced.

5

We conclude the court's strike findings are supported by substantial evidence.

6
Lodg. Doc. 5 at 2-8.

7
D.  Discussion of Claims One, Two and Three

8
Petitioner's Claim One, requesting this court to review the proper application of the state

9
sentencing statute, explicitly requests review of a state law question and does not present a

10
cognizable federal claim.  Petitioner's Claim Two, though couched in due process terms, merely

11
asserts the same alleged errors in the application of California law.  Since the state appellate

12
court's decision rejecting these claims did not amount to a subterfuge to avoid federal review of a

13
constitutional violation, both Claims One and Two fail to present a cognizable federal claim.  See

14
Swarthout v. Cooke, 131 S.Ct. 859, 863 (2011) ("[A] 'mere error of state law' is not a denial of

15
due process.") (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982)); Miller v. Vasquez, 868

16
F.2d 1116, 1118−19 (9th Cir. 1989) (declining to address the petitioner's claim on the merits

17
because "whether assault with a deadly weapon qualifies as a 'serious felony' under California's

18
sentence enhancement provisions is a question of state sentencing law" for which federal habeas

19
relief is unavailable (quoting Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985)); Patel v.

20
Hartley, No. CV 11-08523-R (SH) 2012 WL 2805020, at *7 (C.D. Cal. June 15, 2012)

21
("[P]etitioner's sentencing error claim [that the trial court erred in finding that petitioner's 1992

22
conviction qualified as a 'strike' under California's 'Three Strikes Law'] solely involves the

23
interpretation and/or application of a state sentencing law and, as such, is not cognizable on

24
federal habeas review.").  For these reasons, Claims One and Two of the pending petition should

25
be denied.

26
Claim Three should also be denied.  The state court's on-the-merits rejection of

27
petitioner's sufficiency of the evidence claim is entitled to deference under AEDPA.  See Juan H.

28

1  v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005) (holding that a federal habeas petitioner's Jackson

2  claim is subject to deferential review under AEDPA).  Although the state court did not expressly

3  cite Jackson in rejecting petitioner's claim, the state court's analysis was consistent with, and a

4  reasonable application of, the Jackson standard.  See Hurtado v. Tucker, 245 F.3d 7, 13, 15 (1st

5  Cir. 2001) (holding that the state court applied the proper Jackson standard although not citing it);

6  see also People v. Johnson, 26 Cal.3d 557, 575−78 (1980) (explaining that a state-law sufficiency

7  of the evidence review in California expressly follows the Jackson standard).

8        At petitioner's court trial on the prior convictions, the prosecution had to prove that his

9  two prior assault convictions were for assault with a deadly weapon.  Among the evidence

10 introduced by the prosecution at the court trial was the information charging him with two counts

11 of "ASSAULT GREAT BODILY INJURY AND WITH DEADLY WEAPON," the minute order

12 for sentencing describing the two assault convictions as "Assault GBI w/DW," and the abstract of

13 judgment describing the two assault convictions as "Assault GBI w/DW."  Lodg. Doc. 5 at 3.

14       Petitioner argues here, as he did in state court, that these documents were ambiguous as to

15 whether the assault convictions were for assault with a deadly weapon or for assault by means

16 likely to produce a great bodily injury.  In reviewing a claim of sufficiency of the evidence, if the

17 trier of fact could have drawn conflicting inferences from the evidence, a reviewing court assigns

18 the inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). In

19 addition, this court is bound by the state court's interpretation of state law that:

> 20 The use of the conjunctive in an information charging a violation of
>    section 245, subdivision (a)(1), when the statute uses the
> 21 disjunctive in defining the crime, has been found to charge "only
>    the single act of assault with a deadly weapon." (People v. Flynn
> 22 (1995) 31 Cal.App.4th 1387, 1394.)  "In such instance the phrase
>    'by means of force likely to produce great bodily injury' simply
> 23 describes the manner in which the weapon is used and serves to
> 24 explain why it thereby constitutes a deadly weapon." (Ibid.)

25 Lodg. Doc. at 5−6.

26       In rejecting petitioner's sufficiency of the evidence claim, the state appellate court

27 properly viewed the evidence in the light most favorable to the state court judgment and

28 considered all reasonable inferences in support of that judgment in accordance with the Jackson

1  standard.  The state court then reasonably found that "substantial evidence" supported a finding

2  that the assault convictions were for assault with a deadly weapon.  Rejection of the claim on this

3  basis was consistent with, and a reasonable application of the <u>Jackson</u> standard, which requires

4  that any rational trier of fact could have found true beyond a reasonable doubt that petitioner's

5  prior assault convictions were for assault with a deadly weapon.  <u>See Jackson</u>, 443 U.S. at 319.

6        IV.     <u>CLAIM FOUR: DOUBLE JEOPARDY</u>

7        In Claim Four, petitioner contends the Double Jeopardy Clause of the Fifth Amendment

8  would prohibit a retrial on his prior convictions in the event that this court found insufficient

9  evidence to sustain the imposition of the strikes.  ECF No. 4 at 5.  Petitioner exhausted this claim

10  by presenting the same allegation to the California Supreme Court in his petition for review.

11  Lodg. Doc. 6 at 24−28.  The intermediate court of appeal, in the last reasoned state court decision

12  applicable to this claim , found that the trial court's strike findings were supported by substantial

13  evidence and failed to reach the double jeopardy issue.  <u>See</u> Lodg. Doc. 5.

14        Here as in state court, petitioner's double jeopardy claim is stated conditionally.  Because

15  petitioner's challenges to the strike findings fail for the reasons previously explained, Claim Four

16  presents no basis for discussion or relief.

17        V.     <u>CLAIMS FIVE, SIX AND SEVEN: EXHAUSTION AND PROCEDURAL BAR</u>

18        Although petitioner presented the allegations contained in Claims Five, Six and Seven to

19  the California Supreme Court in his petition for writ of habeas corpus (Lodg. Doc. 12 at 3−4),

20  respondent contends these grounds remain unexhausted because they were not presented with

21  sufficient particularity.  ECF No. 22 at 13−15.  In the alternative, respondent contends these

22  grounds are procedurally barred.  <u>Id.</u> at 15−18.  In yet another alternative, respondent contends

23  the court may exercise discretion to deny these grounds on the merits.  <u>Id.</u> at 18.

24        It is axiomatic that petitioner can proceed in this court only upon exhausted claims.

25  Exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas

26  corpus.  28 U.S.C. § 2254(b)(1).  If exhaustion is to be waived, it must be waived explicitly by

27  respondent's counsel.  28 U.S.C. § 2254(b)(3).  A waiver of exhaustion may not be implied or

28  inferred.  The United States Supreme Court has held that a federal district court may not entertain

1    a petition for habeas corpus unless the petitioner has exhausted state remedies with respect to

2    each of the claims raised.  Rose v. Lundy, 455 U.S. 509 (1982).  A petitioner satisfies the

3    exhaustion requirement by providing the highest state court with a full and fair opportunity to

4    consider all claims before presenting them to the federal court.  O'Sullivan v. Boerckel, 526 U.S.

5    838, 844–45 (1999) (citing Picard v. Connor, 404 U.S. 270, 275–276 (1971)); Ybarra v.

6    McDaniel, 656 F.3d 984, 991 (9th Cir. 2011), cert. denied, 132 S.Ct. 1904 (2012); Middleton v.

7    Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478 U.S. 1021 (1986).  Regardless, a district

8    court may deny an unexhausted claim on the merits notwithstanding a petitioner's failure to

9    exhaust.  28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005) (holding

10   that an unexhausted petition may be denied on the merits when it is perfectly clear that the

11   applicant does not raise even a colorable federal claim).

12        In addition, as a general rule, a federal habeas court "will not review a question of federal

13   law decided by a state court if the decision of that court rests on a state law ground that is

14   independent of the federal question and adequate to support the judgment."  Calderon v. United

15   States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir.1996) (quoting Coleman v. Thompson,

16   501 U.S. 722, 729 (1991)).  In order for a state procedural rule to be found independent, the state

17   law basis for the decision must not be interwoven with federal law.  LaCrosse v. Kernan, 244

18   F.3d 702, 704 (9th Cir. 2001).  To be deemed adequate, the rule must be well established and

19   consistently applied.  Poland v. Stewart, 169 F.3d 575, 577 (9th Cir.1999).  An exception to the

20   general rule exists if the prisoner can demonstrate either cause for the default and actual prejudice

21   as a result of the alleged violation of federal law, or that failure to consider the claims will result

22   in a fundamental miscarriage of justice.  Coleman, 501 U.S. at 750.

23        Here, the California Supreme Court's order denying the petition reads: "The petition for

24   writ of habeas corpus is denied.  (See People v. Duvall (1995) 9 Cal.4th 464, 474; In re Swain

25   (1949) 34 Cal.2d 300, 304; In re Dixon (1953) 41 Cal.2d 756, 759.)"  Lodg. Doc. 13.

26        California's Dixon rule "bars California state courts from granting habeas relief to a

27   prisoner who failed to pursue the claims raised in his habeas petition on direct appeal from his

28   conviction, unless his claims fall within an exception to the rule."  La Crosse, 244 F.3d at 705 n.

14

1  11 (quoting In re Dixon, 41 Cal.2d 756 (1953)).  In Duvall, at the cited page, the California

2  Supreme Court held that a habeas corpus petitioner must "state fully and with particularity the

3  facts on which relief is sought," and must "include copies of reasonably available documentary

4  evidence supporting the claim." Duvall, 9 Cal.4th at 474.  Citations to both In re Swain and In re

5  Duvall indicate that the California Supreme Court denied one or more claims in the petition

6  because it was not alleged with sufficient particularity.  See Kim v. Villalobos, 799 F.2d 1317,

7  1319 (9th Cir. 1986).

8       The state court's order did not specify which rule was being applied to which of

9  petitioner's claims.  Accordingly, despite the asserted procedural bar, judicial economy weighs in

10  favor of reviewing petitioner's Claims Five, Six and Seven on the merits.  See Lambrix v.

11  Singletary, 520 U.S. 518, 522−25 (holding that a federal court need not invariably resolve a state

12  procedural bar issue first where it presents complicated issues of state law and the other issue is

13  easily resolvable against the petitioner); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002)

14  ("Procedural bar issues are not infrequently more complex than the merits issues presented by the

15  appeal, so it may well make sense in some instances to proceed to the merits if the result will be

16  the same").  Likewise in regard to the exhaustion issue, because petitioner fails to present even a

17  colorable federal claim, this court should deny the petition on the merits.  28 U.S.C. § 2254(b)(2);

18  Cassett, 406 F.3d at 624.

19       Because the California Supreme Court did not reach the merits of these claims, de novo

20  review applies.  See Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011) ("When it is clear… that

21  the state court has not decided an issue, we review that question de novo."); Cone v. Bell, 556

22  U.S. 449, 472 (2009).  Respondent contends that merits review should involve application of

23  AEDPA standards to the decision of the California Court of Appeal (Lodg. Doc. 11), which

24  expressly rejected petitioner's claims "on the merits" without further elaboration.  Respondent

25  cites no authority, however, for the proposition that a federal court should "look through" a higher

26  court's procedural denial of a habeas claim to a lower court's merits denial.  Because the

27  California Supreme Court stated its reasons – procedural reasons – for rejecting the claims, the

28  undersigned finds that there was no "unexplained" denial that would support application of the

1    "look-through" presumption.  See Ylst, 501 U.S. at 806.  Accordingly, this court should review

2    Claims Five, Six and Seven de novo.  In any event, if a claim fails under de novo standard of

3    review, it would also fail under AEDPA's more deferential standard.  See Berghuis v.

4    Thompkins, 130 S.Ct. 2250, 2264 (2010).

5        VI.    MERITS OF CLAIMS FIVE AND SIX: INEFFECTIVE ASSISTANCE

6                A.   Petitioner's Allegations

7            In Claim Five, petitioner claims trial counsel failed to "investigate independently/ This

8    effected [sic] the outcome of the trial and deprived this Petitioner's right to a proper defense at

9    Trial."  ECF No. 4 at 7.  Petitioner alleges that trial counsel failed to have an investigator check

10   out "anything [petitioner] asked him to," "[n]ever checked the rules of Police Procedure," and

11   "[n]ever pressed the court for a request for medical examination, expert witnesses (medical

12   doctor) was denied."  Id.  In Claim Six, petitioner alleges that counsel failed to impeach perjured

13   testimony given by victims Suzie Thompson and Wade Stafford.  ECF No. 4 at 8.

14               B.   The Clearly Established Federal Law Governing the Claims

15           To establish a constitutional violation based on ineffective assistance of counsel, a

16   petitioner must show (1) that counsel's representation fell below an objective standard of

17   reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

18   Washington, 466 U.S. 668, 692, 694 (1984).  In evaluating counsel's performance, the court

19   applies a strong presumption that counsel's representation fell within the wide range of

20   reasonable professional assistance. Strickland, 466 U.S. at 689.  Prejudice means that the error

21   actually had an adverse effect on the defense.  There must be a reasonable probability that, but for

22   counsel's errors, the result of the proceeding would have been different.  Id. at 693–94.  A

23   reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.  A

24   reviewing court need not address both prongs of the Strickland test if the petitioner's showing is

25   insufficient as to one prong.  Strickland, 466 U.S. 668 at 697.  "If it is easier to dispose of an

26   ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be

27   so, that course should be followed."  Id. at 689.

28   ////

16

1          C. Discussion

2          Petitioner's allegations in support of Claim Five are conclusory, and fail to support either

3 the performance prong or the prejudice prong of Strickland.  Petitioner does not allege what

4 additional investigation should have been conducted, what information would have been

5 obtained, what rules of police procedure should have been "checked," or what kind of medical

6 exam or expert witnesses counsel should have pursued.  On this basis, Claim Five should be

7 denied.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations of

8 ineffective assistance which are unsupported by a statement of specific facts do not warrant

9 habeas relief.") (citing Boehme v. Maxwell, 423 F.2d 1056, 1058 (9th Cir. 1970)); see also, e.g.,

10 Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could

11 have said is not enough to establish prejudice."); Hendricks v. Calderon, 70 F.3d 1032, 1042

12 (1995) ("Absent an account of what beneficial evidence investigation into any of these issues

13 would have turned up, [petitioner] cannot meet the prejudice prong of the Strickland test.").

14          In Claim Six, petitioner alleges that counsel was ineffective for failing to impeach the

15 testimony of victim-witnesses Thompson and Stafford, and failing to make their credibility "a

16 major issue for the jury to decide."  ECF No. 4 at 8.  Petitioner states that Thompson and Stafford

17 are lovers, felons, and admitted meth users who "shared $19,500 dollars of witness protection

18 money which is a strong motive for drug users to lie."  Id.  Further,

19
20          During cross examination of Ms. Thompson kidnapped
             victim/witness, accepted collect phone calls from Petitioner.  The
             very person who was alleged to have kidnapped her.  The
21          conversation had to do with her speaking with Mr. Hoptowit,
             Petitioner's defense attorney.  Under oath she denied ever trying to
22          contact [Mr. Hoptowit], but the fact was she tried to contact his
             office (7) times.  Mr. Hoptowit testified to this fact Ms. Thompson
23          left (3) messages on his phone machine.  He tried to contact her, to
             no avail, one message was dated 1-2-07.  Why the perjury was
24          never forced to be an issue is beyond this Petitioner's thinking.
             This should have been impeached testimony and a jury should have
25          decided the issues of perjury.

26

27 ECF No. 4 at 8 (internal citations omitted).

28          During closing argument, defense counsel argued to the jury, in relevant part:

17

You have now been exposed, I suspect to most of you, to a brand new world; prison, parole, felons, drugs, dopers, where people are hardened, where there is bravado.  It's bizarre.  There is loyalty.  There is distortion.  It's sometimes crude.  There is trust and distrust.  That's the world these people live in.  ¶…¶

… [I]f you decide that a witness deliberately lied about something significant in this case, you should consider not believing anything the witness said.  It goes on to say you can sort it out, if you want to, and believe part of it, but you should not believe anything that witness said if they deliberately lied.

What is the evidence from Wade [Stafford] and Suzie [Thompson]?  [¶]  I haven't used drugs in years, twice recreational sex, twice in the last – since May.  [¶]  I never called Mr. Hoptowit.  [¶]  Several messages, never returned.  [¶]  I am not afraid of Wade.  He's never hurt me.  [¶]  Lit cigarette up the nose.  [¶]  Can we trust her testimony?  Those are the things she said in front of you.  She lied to you.  You can distrust her, and you should, in fairness to [petitioner].  Any doubt, it goes to his benefit.  [¶]  She told her brother, James Ward, "I am messed up, bro.  I slipped."  [¶]  She's used twice since he got out of prison. … ¶…¶

Even if you don't believe [petitioner], or believe part of it, or whatever, you still have to find the proof to convict through the statement of these dopers.  … ¶…¶

I put [the investigator on the stand] to ask her about trying to go back months and recapture the phone calls from the jail – just couldn't do it.  But it's interesting that the DA had some phone calls where they think [petitioner] is trying to script an eyewitness defense, but not those phone calls.  And yet if they had heard any phone calls and heard [petitioner] and Suzie talking on the phone, wouldn't that be revealing?  That would mean a lot.  We couldn't get them.  Somehow the people didn't either. ¶…¶

Wade and Suzie…. Can you trust anything they say?  …¶…¶

…You just got to know that there is not enough evidence based upon what Wade and Suzie said, and the lack of physical evidence to convict.  You cannot trust Wade and Suzie.  [¶]  ...Why would she lie?  Speculation, but it's logical.  They got married in December.  Wade won Suzie, and so now everything that she says, or says about this incident is to protect Wade.  I call upon you to be reasonable, to use your intellect.  Look at the evidence for what it is…. Suzie said – and I hope you heard it, that they are both ex felons too.  It's a different world.

18

1    Reporter's Transcript Vol. II at 547, 549, 553−54, 557−58.

2           Defense counsel vigorously attacked the credibility of Thompson and Stafford, thus

3    placing the issue before the jury.  The record fully supports application of the general

4    presumption that counsel's performance was reasonable in this regard.  Moreover, there is no

5    likelihood of a different result had counsel attempted to impeach Thompson and Stafford with the

6    specific allegedly perjured statements that petitioner identifies.  Accordingly, Claim Six fails on

7    the merits.

8           VII.    MERITS OF GROUND SEVEN:  POLICE PROCEDURES

9                  A.  Petitioner's Allegations

10          In Claim Seven, petitioner alleges he is entitled to relief because of "faulty police

11   procedures," and that the case Totten v. Merkle, 137 F.3d 1172−76 (9th Cir. 1998),[3] shows his

12   "allegations, if proven, would establish a right to relief."  Id. at 9.  He further explains:

13                  No written statement was taken right away, it was taken a month
                    later, (Does this sound like Police Procedure?).  As serious as a
14                  crime as kidnapping and assault is in this case, a statement would
                    have been taken that day or the very least the next day unless the
15                  victim was near dead and could not speak.  Common sense shows
                    the Police did not follow the guidelines of Police Procedures and
16                  defense attorney did near nothing to show the jury this as well.

17

18   ECF No. 4 at 9.

19                  B.  The Clearly Established Law Governing the Claim

20          To the extent petitioner claims ineffective assistance of counsel in Claim Seven, the

21   Strickland standard applies.  See Strickland, 466 U.S. at 694.  Otherwise petitioner identifies no

22   clearly established law applicable to this claim, and aside from Strickland, none is apparent.

23   There is no federal constitutional right to have police take timely statements taken from victims.

24   ////

25   ////

26   _____

27   [3] In Totten, the petitioner unsuccessfully claimed ineffective assistance of counsel and denial of
     his right to a fair trial based on counsel's failure to present a defense that methamphetamine
28   intoxication and paranoia prevented him from forming the requisite intent to kill.  Totten, 137
     F.3d at 1174-75.  This case does not support petitioner's claim for relief.

C. <u>Discussion</u>

Petitioner fails to demonstrate that counsel performed deficiently, or that prejudice resulted.  To any extent petitioner alleges counsel should have challenged the "faulty" police procedures or the delay in taking witness statements by motion, he suggests no legal basis for counsel to have filed such a motion.  Counsel was not required to raise a futile or unavailing issue.  <u>James</u>, 24 F.3d at 27.

Counsel did argue to the jury that the police's investigation of the case was generally lacking:

> What other physical evidence is there, the knife?  We are not even sure it's the same knife.  The police never put a mark on it.
>
> They were so impressed by this kidnapping, they didn't investigate it.  They took pictures.  That's about it.  There is no testing.  They didn't even do a drug test on anybody.  [¶]  There is no physical evidence in this case, short of those photographs and the knife, that may be the same.  I am not going to insult your intelligence.  I am just saying this is what the police gave us to work with.

Reporter's Transcript Vol. II at 550.  Petitioner does not allege any particular course of action counsel failed to take that might have constituted deficient performance.  Further, petitioner does not assert or argue prejudice, and none appears based on counsel's alleged failure to argue to the jury that the police delayed in taking the victims' statements.  For these reasons, petitioner's Claim Seven is without merit.

VIII.   <u>CONCLUSION</u>

For the reasons set forth above, Claims One through Four (to the extent they state a federal constitutional claim at all) fail to satisfy the demanding standard of 28 U.S.C. § 2254, and Claims Five, Six and Seven fail on the merits under any standard of review.  Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

20

"Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 29, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:ls//gilb3336.157

21